UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITES STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>TRAVIS TUGGLE, et al.,<br><br>　　　　　　Defendants. | Case No. 16-cr-20070-JES-JEH |

# ORDER AND OPINION

Now before the Court is Defendant Travis Tuggle's Second Motion (Doc. 89) to Suppress. For the reasons set forth below, the Defendant's Motion (Doc. 89) is DENIED.

## BACKGROUND

Defendant Travis Tuggle was indicted on August 1, 2017 in a two-count superseding indictment. Count 1 charges Defendant with conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A). Docs. 41, 85. Count II charges the Defendant with maintaining a drug-involved premises in violation of 21 U.S.C. § 856. *Id*. Currently, trial of this matter is scheduled for September 23, 2019.

On July 6, 2018, the Defendant filed a Motion to Suppress, arguing that evidence obtained from pole camera footage outside his residence constituted an impermissible warrantless search and should be suppressed. *See* Doc. 50. On July 31, 2018, the Court denied Defendant's Motion.

> Defendant takes issue with the Government surveilling the outside of his house and driveway with cameras affixed to a utility pole adjacent to his property. "When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred." *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018) (citing *Florida v. Jardines*, 569 U.S. 1, 11 (2013)). However, it is undisputed here that law enforcement never physically intruded on Tuggle's property when they installed and monitored the

1

pole cameras. Because law enforcement did not trespass on Tuggle's property in order to surveil his activities, the inquiry becomes whether he had a subjective expectation of privacy in his driveway and front of his house. "[A] Fourth Amendment search does *not* occur—even when the explicitly protected location of a *house* is concerned—unless "the individual manifested a subjective expectation of privacy in the object of the challenged search," and "society [is] willing to recognize that expectation as reasonable." *Kyllo*, 533 U.S. at 33 (quoting *Ciraolo*, 476 U.S. at 211).

Here, Defendant's residence was located in a populated residential area and had no fence, wall, or other object that would obstruct the view of a passerby. The lack of any attempt to obscure his driveway or residence from public view weights against a finding that he "manifested a subjective expectation of privacy in the object of the challenged search." *Kyllo*, 533 U.S. at 33. Even if Defendant had a subjective expectation of privacy in his driveway and the front of his house, it is not one that society would find reasonable. *See, e.g., United States v. Evans*, 27 F.3d 1219, 1228 (7th Cir. 1994) ("The agents' approach to the garage did not implicate a Fourth Amendment interest because Evans did not present any evidence at the suppression hearing that he had a reasonable expectation of privacy in the driveway."). Significantly, the pole cameras could only view the exterior of the Defendant's residence and the surrounding area of the house. The cameras only captured what would have been visible to any passerby in the neighborhood. Thus, this case is unlike the thermal imaging that was found to be a search in *Kyllo*. 533 U.S. at 34. And while the Supreme Court has recently extended Fourth Amendment protections to address surveillance methods implicating new technologies, the surveillance here used ordinary video cameras that have been around for decades. *Cf. Carpenter v. United States*, 138 S. Ct. 2206 (2018), *Riley v. California*, 134 S. Ct. 2473 (2014), *United States v. Jones*, 565 U.S. 400 (2012). In fact, when extending Fourth Amendment protections to cell site location information, the Supreme Court specifically stated that its decision did not "call into question conventional surveillance techniques and tools, *such as security cameras*." *Id*. at 2220 (emphasis added).

Doc. 53, at 6–7.

The Court has reviewed Defendant's instant Motion (Doc. 89) to Suppress and has compared it to the earlier Motion (Doc. 50) to Suppress and Defendant's earlier Motion (Doc. 74), which was construed as a motion to reconsider and denied on January 8, 2019. *See* January 8, 2019 Text Order. The instant Motion, like Defendant's previous motions, seeks to suppress video surveillance obtained form a pole camera outside of his residence. Defendant's instant Motion is nothing more than a request to reconsider the Court's orders of July 31, 2018 and

January 8, 2019, where the same issues were considered. In fact, in the instant Motion, Defendant asks the Court to reexamine its prior ruling, arguing for a distinction between cameras used as investigatory tools, rather than cameras used for the purpose of security. Doc. 89, at 3 (citing *United States v. Moore-Bush*, No. 18-cr-30001 (D. Mass. Jul. 3, 2019)).

The Court declines to do so as the Court has previously analyzed the facts specific to this case and ruled accordingly. A contrary ruling, based on different facts from a district court in Massachusetts, does not constitute a change in law, or alter the Court's analysis addressing Defendant's initial Motion to Suppress. The Court therefore finds no reason for another evidentiary hearing or for further argument on this issue. The Motion (Doc. 89) is therefore respectfully denied.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Suppress (Doc. 89) is DENIED.

Signed on this 19th day of August, 2019.

<u>s/ James E. Shadid</u>
James E. Shadid
Chief United States District Judge